UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 12-60654-CIV-MORENO

INTERNATIONAL   BROTHERHOOD   OF
TEAMSTERS,

      Plaintiff,

vs.

AMERIJET INTERNATIONAL, INC.,

      Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Amerijet International, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(1) and (6) or, in the Alternative, for Summary Judgment **(D.E. No. 10)**, filed on **May 24, 2012**.  Plaintiff International Brotherhood of Teamsters ("IBT") filed a complaint to compel arbitration and enforce arbitration awards with this Court on April 12, 2012. The complaint contains six counts requesting relief on a variety of disputes arising out of the grievance procedures of the parties' collective bargaining agreements.  Amerijet then filed a motion to dismiss the complaint, arguing that the Court lacked jurisdiction over the claims and that the IBT had failed to state a claim.  Alternatively, Amerijet asked the Court to grant summary judgment in its favor.  For the following reasons, the Court grants Amerijet's motion to dismiss.  Counts I, II, and III of the IBT's complaint are dismissed for lack of jurisdiction.  Counts IV, V, and VI are dismissed with leave for the IBT to file an amended complaint no later than **November 6, 2012**.

### I. FACTUAL BACKGROUND

The IBT is a labor union certified for purposes of the Railway Labor Act ("RLA") as the

exclusive representative of Amerijet's pilots and flight engineers.  Amerijet itself is a cargo and common air carrier subject to the RLA.  The parties entered into separate collective bargaining agreements covering pilots and flight engineers respectively, each ratified on October 1, 2009.

These agreements contain grievance procedures for the resolution of disputes arising under the terms of the agreements.  A grievance is first presented to the Chief Pilot of Amerijet with an option to appeal to the Director of Operations and then to the Vice President of Human Resources.  In the event that a grievance remains unresolved, the grievance can be taken before a System Board of Adjustment.  A separate Board exists for pilots and flight engineers.  If the Board cannot resolve the grievance, it becomes deadlocked and the IBT has the option to request arbitration of the dispute within thirty days.

Asserting six claims arising out of these grievance procedures, the IBT filed a complaint to compel arbitration and enforce arbitration awards on April 12, 2012.  Count I concerns a number of grievances that the IBT asserted against Amerijet in early 2010 relating to alleged violations of the bargaining agreements.  Advancing the grievances through the dispute resolution procedures, the System Boards deadlocked on nine of the grievances in March 2011.  On April 6, the IBT's System Boards representative David Renshaw sent an email to Amerijet's System Boards representative Derry Huff, Chief Pilot Ed Cook, and Vice President of Human Resources Isis Suria.  In the email, Renshaw listed the individual grievances and wrote "deadlocked—proceed to arbitration" next to the nine grievances over which the Boards could not reach a resolution.  On the same day, IBT representative Daisy Gonzalez responded to Renshaw, Huff, Cook, and Suria with an email asking, "Isis [Suria]: When can we expect the filing for arbitration on the deadlocked cases?"  The IBT maintains that these emails served as

notice of its intention to advance the deadlocked grievances to arbitration.

With no response from Amerijet, the IBT's representatives followed up in an email to Suria on June 2 to inform Amerijet of its position regarding the emails and to note Amerijet's failure to advance the grievances to arbitration. Suria responded in kind on June 7, rejecting the contention that the emails served as proper notice. As a result, Amerijet argued that it was not obligated to initiate arbitration as it had not received proper notice within the thirty-day period.

In its complaint, the IBT argues that Renshaw's April 6 email served as sufficient notice of its intent to pursue arbitration. In support, it cites an instance in September 2010 when Amerijet allegedly treated a similar email from Renshaw as notice of the IBT's desire for arbitration. Additionally, the IBT contends that Gonzalez's reply to Renshaw's email clarified any ambiguity that may have existed. As Amerijet had sufficient notice of the intent to arbitrate within thirty days of the Boards' decisions, the IBT requests that the Court compel Amerijet to proceed to arbitration.

Counts II and III pertain to grievances brought by the union on behalf of Amerijet employees regarding Amerijet's hub in Port of Spain, Trinidad. Specifically, the IBT challenges Amerijet's classification of Port of Spain under the terms of the collective bargaining agreements. In both agreements, section 1.D states that:

> 1. Temporary foreign bases may be opened by the Company upon thirty (30) days written notice to the Union. The filling of vacancies at temporary foreign bases will be done in accordance with Section 16 of this Agreement.
>
> 2. Permanent foreign bases, as designated by the company [sic], may be opened by the Company at any time, without notice, and shall not be covered by the scope of this Agreement.

Compl. to Compel Arbitration Ex. 1, at 7; *id.* Ex. 2, at 7.

Count II centers on grievances brought against Amerijet in March 2010 challenging its previous categorization of Port of Spain as a "temporary domicile/base" under the bargaining agreements. After the System Boards deadlocked on the grievances in November 2010, the IBT advanced them to arbitration with an arbitration date set for August 2011. Similarly, Count III involves the advancement of a grievance filed by Richard Garcia, a former Amerijet employee, challenging his separation from employment based on events that transpired in Port of Spain. In March 2011, the parties convened at the System Board and agreed to move the grievance to arbitration. Yet, on April 27, 2011, Amerijet sent notice to the IBT indicating that it now considered Port of Spain to be a "permanent foreign base" and therefore outside the scope of the bargaining agreements. The IBT claims that Amerijet then unilaterally cancelled the arbitrations on this basis. It now seeks to compel Amerijet to participate in the scheduled arbitrations.

In Counts IV, V, and VI, the IBT seeks enforcement of separate arbitration awards that it claims Amerijet has failed to honor. In particular, Count IV addresses a November 2010 arbitration award resolving a dispute over minimum pay guarantees for pilots and flight engineers for the roster duty period of September 7, 2009 to October 4, 2009. This period of time included the union's strike against Amerijet that resulted in the ratification of the bargaining agreements on October 1, 2009. Despite the arbitrator's holding that Amerijet must pay all pilots who held bidding privileges during the period pursuant to the parties' agreements, the IBT alleges that Amerijet has yet to pay any of the eligible employees.

Next, Count V concerns an April 2011 arbitration award requiring Amerijet to continue its prior procedure of advising flight engineers in advance of a rotation for planned "Zero G" flights. The IBT alleges that Amerijet has failed to provide the advance notice or allow flight

engineers to bid on the flights according to seniority in contravention of the award.

Last, Count VI deals with a November 2011 arbitration award regarding the posting of component legs of flights in Amerijet's schedules. In his opinion, the arbitrator held that Amerijet was responsible for listing the component legs and their durations in its schedules where it was able to do so. Despite the award, the IBT argues that Amerijet has failed to post this information in its schedules and therefore seeks enforcement of the arbitrator's decision.

## II. DISCUSSION

### A. Count I

In its motion to dismiss, Amerijet contends initially that the Court lacks subject matter jurisdiction over Count I under the RLA and moves to dismiss under Federal Rule of Civil Procedure 12(b)(1). It asserts that the dispute over the manner in which the IBT attempted to advance the grievances to arbitration constitutes a "minor dispute" involving the interpretation and application of the collective bargaining agreements. Moreover, it insists that it is arguably justified in maintaining that the emails did not serve as notice requiring it to initiate arbitration under the terms of the agreements.

Disputes under the RLA are divided generally into two categories: major disputes and minor disputes. *Bhd. of Maint. of Way Emps. v. CSX Transp., Inc.*, 143 F. App'x 155, 158 (11th Cir. 2005). In distinguishing minor disputes from major disputes, the Supreme Court has stated that minor disputes are those "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *Consol. Rail Corp. v. Ry. Labor Exec. Ass'n (Conrail)*, 491 U.S. 299, 303 (1989). Indeed, minor disputes "contemplate[] the existence of a collective agreement already concluded or, at any rate, a

situation in which no effort is made to bring about a formal change in terms or to create a new one." *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945). Thus, in determining whether a particular dispute is a major or minor dispute under the RLA, a court must consider whether the contested action is "'arguably justified' by the parties' agreement before the minor dispute rule can apply." *CSX Transp., Inc.*, 143 F. App'x at 160 (citing *Conrail*, 491 U.S. at 307). The threshold for "'arguability' is low" and if "reasonable doubt exists as to whether the dispute is major or minor, [a court] will deem it to be minor." *Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*, 755 F. Supp. 2d 1243, 1249–50 (S.D. Fla. 2010) (quoting *CSX Transp., Inc.*, 143 F. App'x at 160).

Significantly, the RLA provides "exclusive jurisdiction to boards of adjustment established under the Act over minor disputes." *Id.* at 1250. Since minor disputes "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions," federal courts lack subject matter jurisdiction over such disputes. *See Haw. Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994). Accordingly, federal courts in general have declined to regulate the manner and timing of arbitration once they have determined that they have no jurisdiction over a minor dispute. *See, e.g., Air Line Emps. Ass'n, Int'l v. Republic Airlines, Inc.*, 798 F.2d 967, 968 (7th Cir. 1986); *Air Line Pilots Ass'n, Int'l v. Champion Air, Inc.*, No. 06-2467 (MJD/SRN), 2007 U.S. Dist. LEXIS 31067, at *11 (D. Minn. Apr. 27, 2007); *Prof'l Flight Attendants Ass'n v. Nw. Airlines Corp.*, No. 05-1446(DSD/SRN), 2005 U.S. Dist. LEXIS 45785, at *7 n.2 (D. Minn. Aug. 5, 2005). For instance, the District of Minnesota in *Champion Air* declined to grant a union's request for an injunction requiring an airline to select chairmen for a System Board and

to schedule a hearing once it had determined that the underlying grievances were subject to arbitration. *See Champion Air, Inc.*, 2007 U.S. Dist. LEXIS 31067, at \*11. The court noted the precedent establishing that courts "do not have jurisdiction to order expedited arbitration because, if the underlying dispute is minor and subject to mandatory arbitration, the courts lack jurisdiction to take any further action." *Id.* at \*10. For this reason, the court concluded that it did not have the authority to regulate the manner in which the parties carried out the arbitration procedures under their collective bargaining agreement. *See id.* at \*9–11.

In the present case, Amerijet points to section 25.D.2 of the bargaining agreements that states: "If a two-member [System] Board is unable to agree upon a finding or a decision, it shall forthwith provide written communication to the Company and the Union. In such event, the Union may appeal the grievance to Arbitration within thirty (30) calendar days following notification of the deadlock." Compl. to Compel Arbitration Ex. 1, at 63; *id.* Ex. 2, at 63. Because the initial email was sent by Renshaw, a System Boards representative, rather than by the IBT itself, Amerijet contends that the email does not comply with section 25.D.2's requirement that the union appeal the grievance. In fact, Amerijet cites past instances where the IBT adhered to section 25.D.2 by separately notifying Amerijet of its arbitration appeal. In addition, Amerijet claims that Gonzalez's response email failed to constitute notice as Amerijet's System Boards representative sought clarification of the correspondence but received no response, leaving it with the impression that the IBT did not intend to appeal the grievances.

As this issue fundamentally concerns an interpretation of section 25.D.2, Amerijet argues that this is a "minor dispute" over which the Court has no jurisdiction under the RLA. In Amerijet's opinion, any order compelling arbitration would in effect constitute an impermissible

affirmation of the merits of the IBT's claim that it sufficiently appealed the grievances pursuant to the bargaining agreements. Consequently, Amerijet argues that the issue must be resolved anew through the agreements' grievance procedures rather than through an appeal to a federal court.

In response, the IBT concedes that the dispute over its attempt to advance the grievances is a "minor dispute" under the RLA. However, the IBT firmly maintains that it is not requesting the Court to reach the merits of its claim that it properly advanced the grievances to arbitration. Rather, the IBT states that it is requesting the Court to merely compel Amerijet to proceed directly to the arbitration stage of the grievance procedures where the arbitrator can resolve any procedural objections Amerijet might raise regarding the emails. In effect, the IBT seeks to avoid the inefficiency of having to restart the grievance procedures entirely anew to deal separately with this procedural issue.

In support, the IBT points to the Supreme Court's decision in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964), where the Court held that arbitrators rather than courts should decide "procedural" questions that "grow out of" substantive disputes subject to arbitration under the National Labor Relations Act. *Id.* at 557–58. Noting that this principle has been applied equally to the RLA context, *see Indep. Ass'n of Cont'l Pilots v. Cont'l Airlines*, 155 F.3d 685, 695 n.8 (3d Cir. 1998), the IBT asserts that an arbitrator must also decide the procedural issue present here. However, citing the *John Wiley* Court's concern over the opportunities for delay inherent in separating procedural and substantive issues, *see John Wiley & Sons, Inc.*, 376 U.S. at 558, the IBT urges the Court to order the parties to initiate the arbitration stage of the grievance procedures instead of leaving the parties to start again at square one.

Both parties therefore agree that the dispute over whether the emails constituted sufficient notice to advance the grievances to arbitration is a minor dispute involving the interpretation and application of the collective bargaining agreements. Indeed, given the low threshold, Amerijet is arguably justified in maintaining that the IBT did not properly advance the grievances under the bargaining agreements. Section 25.D.2 states that the union itself must file the appeal, but the provision is ambiguous as to what exactly constitutes a sufficient appeal after the Boards deadlock on a grievance. Furthermore, the parties agree that the original underlying grievances are substantive in nature while the present issue in front of the Court regarding the emails is procedural. Finally, the parties acknowledge that all of the grievances are subject to resolution by the bargaining agreements' grievance procedures.

At its core then, the present dispute is whether the Court can compel Amerijet to commence the final arbitration stage of the grievance procedures rather than leaving the IBT to initiate the procedures anew in order to bring its procedural challenge. The IBT is in essence asking the Court to regulate the manner of the grievance procedures after acknowledging that the dispute is a minor dispute over which the Court has no jurisdiction. As the precedent in other circuits suggests, a federal court has no authority to proceed any further over the grievance procedures once a lack of jurisdiction has been determined. *See Republic Airlines, Inc.*, 798 F. 2d at 968; *Champion Air, Inc.*, 2007 U.S. Dist. LEXIS 31067, at *11; *Nw. Airlines Corp.*, 2005 U.S. Dist. LEXIS 45785, at *7 n.2 . Accordingly, the Court grants Amerijet's motion to dismiss Count I for lack of subject matter jurisdiction.

Nor is the IBT's appeal to the Supreme Court's holding in *John Wiley* persuasive. That decision involved a dispute over who could decide procedural issues related to underlying

substantive grievances: federal courts or the arbitration bodies established by collective bargaining agreements. *See John Wiley & Sons, Inc.*, 376 U.S. at 556. Indeed, the *Continental Airlines* case that the IBT cites for the application of this concept to the RLA context deals with the same issue. *See Cont'l Airlines*, 155 F.3d at 692. However, neither party in the present case disputes that the bargaining agreements' grievance procedures ultimately must resolve this procedural issue. The parties merely disagree over whether this Court has the ability to regulate the manner of those grievance procedures. Yet, as noted above, this Court does not have jurisdiction to proceed further once it has been established that the notice issue is a matter exclusively for the grievance procedures to resolve.

### B. Counts II & III

In response to the IBT's allegations in Counts II and III, Amerijet admits that it revisited its position on the status of Port of Spain after the IBT filed its Port of Spain grievances, re-categorizing the hub as a "permanent foreign base" since March 2010. However, Amerijet maintains that the IBT failed to timely appeal the designation, resulting in a finalization of the classification under the collective bargaining agreements. In fact, Amerijet points to communications that Chief Pilot Cook had with union representative John Kunkel requesting Kunkel to confirm the IBT's stance on the re-categorization and the applicability of the agreements. With no objections from the IBT, Amerijet states that it only then cancelled the arbitrations under the presumption that the union had conceded the inapplicability of the agreements. Nevertheless, as a threshold matter, Amerijet now argues that the Court lacks jurisdiction over the grievances. Citing the Ninth Circuit's decision in *Independent Union of Flight Attendants v. Pan American World Airways, Inc.*, 923 F.2d 678 (9th Cir. 1991), *withdrawn*

-10-

by *Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*, 966 F.2d 457 (9th Cir. 1992), it maintains that the RLA has no extraterritorial application to employees who both perform their duties exclusively outside the United States and engage in "purely foreign flying." Thus, it requests the court to dismiss Counts II and III for lack of subject matter jurisdiction under Rule 12(b)(1).

A factual jurisdictional attack under Rule 12(b)(1) occurs when the motion to dismiss challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  Importantly, when a party mounts a factual attack, the court may consider "matters outside the pleadings, such as testimony and affidavits." *Id.*  Indeed, where the attack is factual, a "district court is free to independently weigh facts, and 'may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56.'" *Campbell v. Paradigm Inv. Grp., LLC*, No. 5:10-cv-1196-TMP, 2011 U.S. Dist. LEXIS 154829, at *4 (N.D. Ala. Dec. 29, 2011) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).  "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence*, 919 F.2d at 1529.  In the present case, Amerijet's challenge to the RLA's application to its Port of Spain crew members is one that attacks the existence of subject matter jurisdiction in fact.  The Court will therefore consider matters outside the pleadings to determine whether it has subject matter jurisdiction over this dispute.

As a fundamental canon of statutory construction, "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United

-11-

States." *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949). Premised on the assumption that

"Congress is primarily concerned with domestic conditions," federal courts thus must act under a

"presumption against extraterritoriality to federal statutes." *Pan Am. World Airways, Inc.*, 923

F.2d at 680 (quoting *Filardo*, 336 U.S. at 285). This presumption "creates a high threshold" and

courts have "consistently required . . . a 'clear expression' of congressional intent to apply

legislation extraterritorially." *Id.* at 681, 682.

   In relation to the RLA, federal courts have cited this presumption in rejecting

extraterritorial application of the statute. *See, e.g.*, *id.* at 683; *Air Line Stewards & Stewardesses*

*Ass'n v. Nw. Airlines, Inc.*, 267 F.2d 170, 178 (8th Cir. 1959). Looking to the legislative history

of the RLA, these courts have noted that, at the time that it was amended to apply to common air

carriers, the statute defined "carrier" as one subject to the provisions of the Interstate Commerce

Act ("ICA"). *See Pan Am. World Airways, Inc*, 923 F.2d at 682–83 (citing 45 U.S.C. § 151

(1982)); *Nw. Airlines, Inc.*, 267 F.2d at 173; *Air Line Dispatchers Ass'n v. Nat'l Mediation Bd.*,

189 F.2d 685, 690 (D.C. Cir. 1951); *Gen. Comm. of Adjustment v. United States*, No. CIV. 4-75-

444, 1979 U.S. Dist. LEXIS 12354, at *10 (D. Minn. May 16, 1979). Since the ICA was itself

limited in application only to transportation taking place within the United States, the courts have

concluded that "Congress intended these limitations to apply to carriers by air as well." *Pan Am.*

*World Airways, Inc*, 923 F.2d at 683 (citing *Air Line Dispatchers Ass'n*, 189 F.2d at 690; *Air*

*Line Stewards & Stewardesses Ass'n, Int'l v. Trans World Airlines, Inc.*, 273 F.2d 69, 71 (2d Cir.

1959)). In light of this legislative history and the absence of an explicit extraterritorial

application of the RLA within the statute, courts have therefore "uniformly precluded RLA

jurisdiction over disputes involving employees who perform services wholly outside the United

States." *Vollmar v. CSX Transp., Inc.*, 705 F. Supp. 1154, 1164–65 (E.D. Va. 1989); *see also Pan Am. World Airways, Inc*, 923 F.2d at 683 (holding that the RLA "does not include purely foreign flying"); *Nw. Airlines, Inc.*, 267 F.2d at 175 (concluding that the RLA is "non-extraterritorial"); *Air Line Dispatchers Ass'n*, 189 F.2d at 690 ("[T]he Act does not extend to an air carrier and its employees located entirely outside the continental United States and its territories.").

Among the most recent opinions affirming this principle, the Ninth Circuit in *Pan American* refused to apply a pre-existing collective bargaining agreement to a Pan American subsidiary that operated exclusively in Europe and hired solely foreign employees represented by a German union. *See Pan Am. World Airways, Inc*, 923 F.2d at 679. As a general matter, the court determined that the RLA did not apply to "purely foreign flying." *See id.* at 683. Likewise, the district court in *General Committee of Adjustment* found that an RLA arbitration board lacked jurisdiction over employees who worked exclusively in Canada "at all times material to their claims." *Gen. Comm. of Adjustment*, 1979 U.S. Dist. LEXIS 12354, at *3. Citing earlier precedent, as well as the possibility of a conflict with Canadian jurisdictional interests, the court concluded that the RLA contained "specific geographic limitations . . . to employment within the United States." *Id.* at *14.

To support its position in the current dispute, Amerijet has attached two affidavits from Marcia McManus, Amerijet's Crew Planner/Scheduling Manager, and Derry Huff, Amerijet's Senior Director Strategic Initiatives, describing the airline's operations in Port of Spain. These affidavits state that all Amerijet crew members working in Port of Spain are stationed there temporarily for periods lasting up to ten days on average, but are permanently domiciled in

-13-

Miami. Mot. to Dismiss Ex. A, ¶ 4–5; Mot. to Dismiss Ex. B, ¶ 4. Cargo is transported from Miami International Airport to Port of Spain and then is distributed to various Caribbean and Latin American locations via aircraft stationed in Port of Spain. Mot. to Dismiss Ex. B, ¶ 3. At no time during their temporary stay do crew members make scheduled flights to, or transits through, the United States. Mot. to Dismiss Ex. A, ¶ 6.

The IBT counters this jurisdictional challenge by attempting to distinguish the facts of the present case from the *Pan American* decision. In contrast to the foreign national employees who operated exclusively in Europe in *Pan American*, the IBT argues that Amerijet is a Florida corporation that transports cargo to and from the United States using flight crews based in the United States. Moreover, unlike the employees in *Pan American*, the Amerijet employees at issue here are all represented by an American union, namely the IBT. Though the IBT admits that Port of Spain crew members are stationed overseas temporarily, it stresses the fact that these employees are permanently domiciled in the United States. Finally, the IBT denies that Trinidad has any interest in resolving the present dispute that could result in a collision between domestic and foreign law if the Court were to apply the RLA.

Although the case law does not speak specifically to a situation where, as here, employees are only working abroad periodically before returning to the United States, the strength of the precedent limiting the scope of the RLA to the United States and its territories is convincing. In fact, as the Ninth Circuit in *Pan American* noted, the central issue in these cases is "where the transportation was," not "where the employees were based." *Pan Am. World Airways, Inc*, 923 F.2d at 682 n.7 (quoting *Local 553, Transp. Workers Union of Am., AFL-CIO v. E. Air Lines, Inc.*, 544 F. Supp. 1315, 1322–23 n.1 (E.D.N.Y. 1982), *aff'd with modified relief*, 695 F.2d 668

-14-

(2d Cir. 1982)).  Consequently, even though the Port of Spain crew members may have been permanently domiciled in Miami, their transportation while in Port of Spain occurred strictly between foreign destinations.  See Mot. to Dismiss Ex. A, ¶ 4–6.  Because the grievances in Counts II and III involve exclusively foreign transportation taking place in Port of Spain, the Court dismisses both counts for lack of subject matter jurisdiction.

### C.  Counts IV, V & VI

Amerijet raises comparable objections to each of the IBT's final three counts.  From the outset, Amerijet focuses its attacks on the sparseness of the IBT's complaint.  In particular, Count IV states, "Despite receiving proof from the Union of the availability of affected members during the contested RDP, to date Amerijet has failed to pay any of those affected employees the 60-hour minimum pay guarantee as ordered by Arbitrator Lurie."  Compl. to Compel Arbitration at 11, ¶ 4.  Amerijet contends that the IBT has failed to identify any employee who was available to fly during the contested roster duty period and is therefore eligible for the minimum pay guarantee.  Count V alleges, "Despite the award, to date Amerijet has failed to provide advance notice to Flight Engineers of Zero G Flights and has not allowed Flight Engineers to bid on those flights by seniority.  It has therefore failed to comply with Arbitrator Goldstein's award."  Id. at 12, ¶ 8.  Count VI likewise claims, "Despite the award, to date Amerijet has failed to include the component legs and the times associated with them in its schedules.  It has thus failed to comply with the arbitration award."  Id. at 13, ¶ 4.

Initially, Amerijet challenged these counts under Rule 12(b)(6) for failure to state a claim.  However, in its response to Amerijet's motion to dismiss, the IBT appeared to indicate that it was not prepared to offer instances of definite violations of the arbitration awards.  Indeed, in relation

to Counts IV and VI, it noted that Amerijet had not cited any case law "for the proposition that a party must wait for an arbitration award [to] be breached before confirming it or compelling compliance with it." Pl.'s Resp. to Def.'s Mot. to Dismiss at 17.  Regarding Count VI in particular, the IBT highlighted the fact that the award was injunctive in nature. *See id.*  It concluded with a request that

> [s]hould the Union be obligated at the pleading stage to prove as an element of enforcing the award that the award has been breached, then rather than grant summary judgment to Amerijet, the court [sic] should direct the Union to provide a more definite statement or to dismiss the count with leave to amend the complaint; in the alternative, the Union should be given leave to engage in discovery regarding Amerijet's compliance with the component leg award.

*Id.*  In light of these requests, Amerijet now maintains that, since the IBT cannot allege specific violations of the arbitration awards or of the collective bargaining agreements, there is no Article III case or controversy and the Court therefore lacks jurisdiction over all three counts.

Article III of the Constitution restricts the judicial power of the federal courts to "cases" or "controversies."  *See* U.S. Const. art. III, § 2.  Accordingly, "a number of district 'courts have denied requests to confirm [or vacate] arbitration awards between labor and management where there was no live and actual dispute between the parties.'" *IFF Chem. Holdings, Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, No. 3:10-cv-738-J-99TJC-JRK, 2011 U.S. Dist. LEXIS 68554, at *9 (M.D. Fla. Apr. 25, 2011) (quoting *1199 United Healthcare Workers E. v. Civista Med. Ctr., Inc.*, No. DKC 10-0479, 2011 U.S. Dist. LEXIS 8268, at *2 (D. Md. Jan. 28, 2011)).  Thus, for instance, the *IFF Chemical Holdings* case involved an attempt by a union to confirm an arbitration award for an employee who had died before the arbitration panel rendered a decision on his grievance. *See id.* at *4–5.

Finding that the employee's death had rendered the issue moot, the court declined to confirm the award. *See id.* at *12. In like manner, the District of Maryland in *Civista Medical Center* determined that no case or controversy existed when a union sought to confirm an arbitration award even though it did not seek to collect a monetary award or enforce the award due to non-compliance. *See 1199 United Healthcare Workers E. v. Civista Med. Ctr., Inc.*, No. DKC 10-0479, 2011 U.S. Dist. LEXIS 8268, at *3 (D. Md. Jan. 28, 2011). In doing so, the court rejected the union's claims that the Federal Arbitration Act permits a court to confirm an award without a threshold factual showing of an underlying dispute between the parties. *See id.*

Here, the IBT's meager complaint and the statements in its response indicate the possibility that the IBT cannot allege genuine violations of the arbitration awards at this time. The actual claims in each count are confined to a single paragraph that only indefinitely asserts a breach of each award. If the IBT truly cannot allege specific violations of the awards, but rather is simply requesting the Court to confirm the awards as a matter of course, the Court must dismiss the counts for lack of subject matter jurisdiction similar to the decision in *Civista Medical Center*. In such a case, the IBT's claims would constitute mere hypothetical, and therefore non-justiciable, disputes. As a result, the Court dismisses the final three counts with leave for the IBT to file an amended complaint demonstrating actual violations of the respective awards.

## IV.  CONCLUSION

For the above it reasons, it is

**ADJUDGED** that:

(1) Amerijet's Motion to Dismiss Pursuant to Rule 12(b)(1) and (6) or, in the Alternative,

for Summary Judgment **(D.E. No. 10)**, filed on <u>**May 24, 2012**</u>, is GRANTED.

      (2) Counts I, II, and III of the IBT's complaint are dismissed for lack of subject matter jurisdiction.

      (3) Counts IV, V, and VI of the IBT's complaint are dismissed  with leave for the IBT to file an amended complaint no later than <u>**November 6, 2012**</u>.


      DONE AND ORDERED in Chambers at Miami, Florida, this _____ day of October, 2012.


                            FEDERICO A. MORENO
                            UNITED STATES DISTRICT JUDGE


Copies provided to:

Counsel of Record

-18-