UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-60654-CIV-MORENO

INTERNATIONAL BROTHERHOOD OF TEAMSTERS,

    Plaintiff,

vs.

AMERIJET INTERNATIONAL, INC.,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING PART MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Amerijet International, Inc.'s Motion to Strike Counts I, II, and III and to Dismiss Counts IV, V, and VI of the First Amended Complaint **(D.E. No. 31)**, filed on **November 20, 2012**. Plaintiff International Brotherhood of Teamsters ("IBT") submitted its first amended complaint on November 6, 2012 seeking confirmation of arbitral awards and an order requiring Amerijet's compliance with those awards. Amerijet in turn filed the present motion to dismiss, requesting the Court to dismiss all six counts of the IBT's amended complaint. For the following reasons, the Court grants Amerijet's motion in part and denies it in part. The Court grants Amerijet's motion to strike Counts I, II, and III as the Court has previously ruled that it lacks subject matter jurisdiction over them. The Court likewise grants Amerijet's motion to dismiss Count IV as the IBT fails to allege a specific violation of the minimum pay arbitral award. Finally, the Court denies Amerijet's motion to dismiss Counts V and VI, finding instead that the IBT has sufficiently stated claims alleging violations of the respective arbitral awards. Accordingly, the IBT shall file an amended complaint no later than **April 9, 2013**.

## I. FACTUAL BACKGROUND

Plaintiff IBT is a labor union certified for purposes of the Railway Labor Act ("RLA") as the exclusive representative of the pilots and flight engineers of Defendant Amerijet International. Amerijet itself is a cargo and common air carrier subject to the RLA. Following a strike by the IBT in August and September 2009, the parties entered into separate collective bargaining agreements covering pilots and flight engineers respectively. The parties ratified each agreement on September 13, 2009.

On April 12, 2012, the IBT filed a complaint in this Court to compel arbitration and enforce arbitration awards under the RLA. In particular, the IBT alleged six claims arising out of the grievance procedures contained in the bargaining agreements, three of which are pertinent to the present motion. Count IV of the complaint addressed an arbitration award resolving a dispute over minimum pay guarantees for pilots and flight engineers. Count V concerned an April 2011 arbitration award requiring Amerijet to continue its prior procedure of advising flight engineers in advance of a rotation for planned "Zero-G" flights. Finally, Count VI dealt with a November 2011 arbitration award regarding the posting of component legs of flights in Amerijet's schedules.

Amerijet filed an initial motion to dismiss all six counts on May 24, 2012, which this Court granted in its entirety on October 17, 2012. Of relevance here, the Court dismissed Counts IV, V, and VI due to jurisdictional concerns that the IBT could not allege anything more than hypothetical violations of the arbitration awards and was thus seeking to "confirm the awards as a matter of course." *Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*, No. 12-60654-CIV-MORENO, 2012 U.S. Dist. LEXIS 149264, at *27 (S.D. Fla. Oct. 17, 2012). The Court therefore permitted the IBT to resubmit its complaint alleging specific, concrete violations of the

awards or risk dismissal for lack of subject matter jurisdiction. *Id.* at *26. The IBT then filed an amended complaint on November 6, 2012 reasserting its allegations in Counts IV, V, and VI with more particularity and requesting that the Court order Amerijet to comply with the respective awards.[1]

### A. Count IV

The IBT's claims in Count IV stem from the bargaining agreements' guarantee to crew members of a minimum of sixty hours of pay per roster duty period. Prior to a roster duty period, Amerijet determines the duty days for each crew member and issues a duty roster. Due to the IBT's strike from August 27 to September 13, 2009, Amerijet did not issue a duty roster for the roster duty period of September 7 to October 4, 2009 despite the fact that some crew members informed Amerijet during the strike that they were available to work. When Amerijet subsequently issued paychecks for the roster duty period, it did not include the sixty-hour minimum pay guarantee. The IBT then challenged this failure, filing grievances that eventually led to arbitration.

On November 5, 2010, the arbitrator found that Amerijet had violated the bargaining agreements and ordered it to make whole those crew members who had indicated their availability to fly during the contested roster duty period. Specifically, he stated that

> [a]ll pilots who held bidding privileges during the *Contested RDP* shall be paid the 60-hour minimum guarantee set forth in CBA Section 5.B.1, <u>subject to the exceptions</u> set forth in CBA Section 5.P [Absence], and less any wages paid them

---

[1] The IBT's amended complaint also reasserted its allegations in Counts I, II, and III "unchanged solely to preserve its right to appeal." Pl.'s First Am. Compl. 4 n.1, 8 n.2, 9 n.3. In addition to its challenges to Counts IV, V, and VI, Amerijet now seeks in its present motion to strike Counts I, II, and III as redundant under Federal Rule of Civil Procedure 12(f) since the Court dismissed these counts for lack of subject matter jurisdiction in its October 17, 2012 order. *See Int'l Bhd. of Teamsters v. Amerijet Int'l,* 2012 U.S. Dist. LEXIS 149264, at *14–15, 23. As the IBT noted in its response to the motion to dismiss, it "does not ask the court [sic] to revisit or reconsider its prior ruling" on those counts. Pl.'s Resp. to Mot. to Dismiss 1. Consequently, the Court strikes Counts I, II, and III pursuant to its previous dismissal of the claims for lack of subject matter jurisdiction.

> by [Amerijet] with respect to the *Contested RDP*.
> In applying Section 5.P, there shall be no restriction imposed on the means by which a pilot indicated his availability to fly (e.g., an IPD opt-in record, email message, or telephone call supported by billing record confirmation of the call, etc.). Once a pilot has presented evidence of such notice of availability, [Amerijet] will have the burden of proving that a pilot was not available to fly on any particular day claimed. Any failure of [Amerijet] to produce IPD records for the *Contested RDP* (or other records of pilot availability that [Amerijet] kept in the ordinary course of business) shall warrant an adverse inference as to the content of those records.

Pl.'s Compl. Ex. 6, at 17.

The IBT now alleges that Amerijet has violated this order on a few occasions by refusing to compensate crew members despite the union's indication to the airline that the crew members had been available to fly during the contested roster duty period. To be precise, the IBT states that it sent an email to Amerijet after the issuance of the award informing the airline that it had not paid Pilots Britt Belch and Frank Hartlemark notwithstanding their availability during the contested period. Pl.'s First Am. Compl. Count IV, ¶ 22. Furthermore, the IBT claims that both Belch and Hartlemark had contacted Amerijet via email during the contested period on September 15, 2009 to indicate their availability. *Id.* Count IV, ¶¶ 18, 20. Last, the IBT sent an email to Amerijet on May 3, 2011 with a list of employees who had been available for work during the contested period. *Id.* Count IV, ¶ 24. To date, the IBT alleges that Amerijet has refused to pay any of the employees and it thus seeks an order compelling Amerijet to comply with the arbitrator's award.

### B. Count V

In Count V, the IBT argues that Amerijet has failed to comply with an arbitral award ordering the airline to provide advance notice to flight engineers of Zero-G flights. Prior to the 2009 strike, Flight Engineers Michael and Luis Roca took part in Zero-G flights intended to

simulate zero-gravity situations. After the Rocas participated in the union's strike, Amerijet denied them the opportunity to fly on Zero-G flights in spite of an agreement between the union and the airline prohibiting discrimination against employees for participating in the strike. The IBT then filed grievances and proceeded to arbitration.

The arbitrator reached his decision on April 12, 2011. Despite finding that there was "no quantifiable evidence of discriminatory practice in scheduling or reprisals in the non-assignment of Zero G flights" and thus "no contractual violation and correspondingly no right to the monetary remedy sought," Pl.'s Compl. Ex. 7, at 11, 13, the arbitrator nevertheless awarded a remedy "to avoid the potential for any misapplied fairness." *Id.* at 13. Basing his decision on an effort to "remedy any inference" that Amerijet had discriminated, the arbitrator then directed the airline to continue its pre-strike practice of advising flight engineers in advance of a rotation for planned Zero-G flights. *Id.* at 8. However, since the issuance of the award, Amerijet has failed to notify the Rocas of opportunities to bid on Zero-G flights. The IBT accordingly seeks an order requiring Amerijet to both issue advance notice of planned Zero-G flights to the Rocas and allow them to bid on those flights.

### C. Count VI

Finally, the IBT contends in Count VI that Amerijet has violated an arbitration award requiring the airline to post component legs of flights on their monthly schedules. Section 8(D)(1) of the collective bargaining agreements states that "the rostered or scheduled time of duty periods will include the scheduled time of their component legs, deadheading, aircraft repositioning, reserve, training, ground school, simulator training, stations, block times, trip numbers, rest periods, days off, or other assigned duties." Pl.'s Compl. Ex. 1, at 27. When Amerijet failed to post rosters with component legs, the IBT filed grievances that proceeded to

arbitration.

In his decision issued on November 15, 2011, the arbitrator took into account the plain language of the agreements requiring the presence of "component legs" in Amerijet's schedules. *See* Pl.'s Compl. Ex. 8, at 12. However, he also noted that the language of the provisions was borrowed directly from a pre-agreement company handbook in effect from 2004 to 2009. *See id.* Under that handbook, Amerijet did not post component legs on final rosters despite the identical language. *See id.* Additionally, since component legs are not finalized by the time that the schedules are posted, the arbitrator was concerned with the feasability of requiring Amerijet to post component legs in advance given the difficulty in determining exactly what freight would be supplied for shipment for any given location on any given day. *See id.* at 11. Yet, upon review of the record, the arbitrator also determined that "while [Amerijet] effectuates changes in this posted monthly schedule from time to time, the posted public schedule is approximately 90% accurate." *Id.* at 16–17.

> As a result of these findings, the arbitrator concluded that Amerijet must
>
> list the scheduled time of a crew member's (Pilots and PFEs) component legs as required by Section 8(D)(1), with the accepted understanding that per the pre-contract practice from 2004-2009, a practice well known to the parties at the time they agreed upon the inclusion of the subject language as part of their CBAs, schedules change [sic] from time-to-time occur based upon [Amerijet] needs.

*Id.* at 17. The arbitrator then instructed Amerijet to "include the scheduled time of their component legs on the 28-day rostered schedule . . . , with the understanding that [Amerijet] reserves the right to change such schedule as a result of [Amerijet] determined business needs." *Id.* at 18.

The IBT now claims that Amerijet has refused to post component legs as required by the award. As specific evidence of this failure to comply, the IBT focuses on the case of Pilot Frank

Palacios who emailed Amerijet on December 19, 2011 to inquire when the airline would begin posting the component legs. Amerijet responded on December 20, 2011 by stating that it would not include any component legs in rosters except for three specific locations that had already been scheduled at the time the roster was published. Since this time, Amerijet has not posted component legs on Palacios's roster for most trips. The union therefore requests that the Court order Amerijet to post the component legs in its monthly schedules.

## II. DISCUSSION

### A. Count IV

In the present motion, Amerijet argues that the Court should dismiss Count IV for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim for relief under Rule 12(b)(6). In essence, Amerijet presents the same argument for both bases of dismissal. At the outset, Amerijet highlights the portion of the arbitrator's decision that states that "there shall be no restriction imposed on the means by which a pilot indicated his availability to fly" and that "[o]nce a pilot has presented evidence of such notice of availability, [Amerijet] will have the burden of proving that a pilot was not available to fly on any particular day claimed." Pl.'s Compl. Ex. 6, at 17. Amerijet contends that this language requires that an eligible party provide evidence that he or she had previously indicated an availability to fly in order to qualify for the payment.

In light of this requirement, the airline maintains that the IBT has only alleged one specific violation of the arbitral award. In particular, Amerijet first contests the IBT's allegation that it sent an email to Amerijet reporting that Pilots Belch and Hartlemark had contacted Amerijet via email during the contested period to indicate their availability. Offering this email, dated October 27, 2011, as support, Amerijet does admit that the email serves as "evidence" for

purposes of the award for Belch as it identifies him by name and includes as an attachment Belch's own email to Amerijet indicating his availability. *See* Def.'s Mot. to Dismiss First Am. Compl. Ex. 2. However, the email at no point mentions Hartlemark. Instead, it refers to another employee named Higgins with whom Amerijet has executed a release as to any claims against the airline. *See* Def.'s Mot. to Dismiss First Am. Compl. 10 n.6.

Amerijet notes only one other point in the complaint where the IBT alleges that it notified the airline of eligible employees: the May 3, 2011 email containing a list of employees who were available to work during the contested period. *See* Pl.'s First Am. Compl. Count IV, ¶ 24. Offering that email in support of its motion as well, Amerijet stresses the fact that the email provides nothing more than a list of names and contact information. *See* Def.'s Mot. to Dismiss Original Compl. Ex. C, Attach. 16. Consequently, Amerijet argues that the email does not constitute "evidence" of employees providing notice of their availability to the airline as allegedly required by the arbitral award.

Amerijet therefore concludes that the IBT has only sufficiently alleged a violation of the award as to Belch. In accordance with this understanding, Amerijet filed a notice with this Court on January 7, 2013 indicating that it had paid Belch's minimum guarantee and thus considered Count IV to be moot. *See* Def.'s Notice of Mootness 3. Amerijet now requests that the Court dismiss Count IV for lack of subject matter jurisdiction and for failure to state a claim as the IBT has failed to allege any specific violation of the arbitrator's decision.

In response, the IBT argues that Amerijet is effectively asking the Court to adopt its own interpretation of the arbitral award, a step that would be improper at this stage. The IBT in turn offers its own interpretation of the award that it communicated to Amerijet via email in June 2011. In that email, the IBT stated that it believed that "all the award required was any form of

communication from crew members, and that for those who did in fact fly during the disputed pay period, the employer knew they were available to fly, so by definition they would qualify for the guarantee." Pl.'s First Am. Compl. Count IV, ¶ 25. Citing the strong precedent of judicial deference to the decisions of arbitrators, the IBT argues that the Court should confirm the award. Since it claims that it supplied Amerijet with the identity and contact information of employees eligible for the minimum pay guarantee, it maintains that it has alleged a violation of the award. At a minimum, however, the IBT insists that the Court should remand any disputes over the implementation of the award to the arbitrator for clarification.

Since this Court previously directed the IBT to demonstrate in its amended complaint that it was in fact seeking more than confirmation of the award as a matter of course, the Court will deal with the motion to dismiss for lack of subject matter jurisdiction first. "Attacks on subject matter jurisdiction based on Rule 12(b)(1) . . . come in two forms—facial attacks and factual attacks." *Norkunas v. Seahorse NB, LLC*, 720 F. Supp. 2d 1313, 1314 (M.D. Fla. 2010). In a facial attack, a court merely looks to "see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). In contrast, a factual jurisdictional attack under Rule 12(b)(1) occurs when the motion to dismiss challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). Such an attack disputes the "accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffer[s] materials of evidentiary quality in support of [the challenge]." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). Importantly, when a party mounts a factual attack, a "district court is free to independently weigh facts, and 'may proceed as it never could under

12(b)(6) or Fed.R.Civ.P. 56.'" *Campbell v. Paradigm Inv. Grp., LLC*, No. 5:10-cv-1196-TMP, 2011 U.S. Dist. LEXIS 154829, at *4 (N.D. Ala. Dec. 29, 2011) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

Notwithstanding Amerijet's arguments to the contrary, the present jurisdictional attack is of a factual rather than facial nature. As discussed, Amerijet contests the accuracy of a number of the IBT's factual allegations in Count IV and proffers materials of evidentiary quality, namely the emails, in support. The Court would thus ordinarily have the ability to consider matters outside the pleadings to determine whether it has subject matter jurisdiction over this dispute.

However, matters are different when a factual attack also implicates the merits of the underlying cause of action. In such a case, "[t]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Lawrence*, 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). The defendant is then "forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . . both of which place great restrictions on the district court's discretion." *Id.* (quoting *Williamson*, 645 F.2d at 415).

Here, Amerijet's jurisdictional attack is inextricably intertwined with the merits of the IBT's claim. Specifically, Amerijet seeks to demonstrate that the Court lacks jurisdiction by disproving the IBT's allegations that the airline violated the arbitrator's award. This is precisely the essence of the IBT's claim in Count IV. Accordingly, the Court finds that jurisdiction exists and deals with Amerijet's objection as a direct attack on the merits. Amerijet therefore must proceed under either Rule 12(b)(6) or Rule 56.

Normally, the choice between analyzing the motion under either Rule 12(b)(6) or Rule 56 "will depend on whether the district court considered matters outside the pleadings." *Garcia v.*

*Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266 n.11 (11th Cir. 1997). Accordingly, "the district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005). However, the Eleventh Circuit has held that "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Id.*

Regarding centrality, courts have found attached documents to be "central" where they are at the very heart of the plaintiff's claim. In *Bamert v. Pulte Home Corp.*, the Eleventh Circuit found that the district court properly considered purchase agreements attached to a motion to dismiss a complaint alleging violations of federal securities law. *See Bamert v. Pulte Home Corp.*, 445 F. App'x 256, 268 (11th Cir. 2011). As the court noted, "[w]ithout considering the agreements, it would be impossible for the District Court to evaluate properly how much control Plaintiffs exercised over their investments, which turns out to be a crucial issue in this case." *Id.* at 267. Additionally, this Court has held that the attachment of a sales contract in a breach of contract action did not require the Court to convert the motion to dismiss even though the defendants had offered the contract to argue that its forum-selection clause required dismissal. *See Gonzalez v. Watermark Realty Inc.*, No. 09-60265-CIV-MORENO, 2010 U.S. Dist. LEXIS 31039, at *7 (S.D. Fla. Mar. 30, 2010). Because the plaintiff had referred to the sales contract "throughout his [complaint]," the Court found that the centrality requirement had been met. *See id.*

In this case, the Court treats Amerijet's motion as a 12(b)(6) motion to dismiss despite

the fact that it is considering the proffered emails. The IBT refers to these emails throughout its allegations in Count IV as proof that it notified Amerijet of specific employees who were eligible for the pay guarantee. *See* Pl.'s First Am. Compl. Count IV, ¶¶ 22, 24. Moreover, it would be impossible to determine if the IBT had sufficiently notified Amerijet of eligible employees without considering these emails. As a result, the Court finds that the emails are central to the IBT's claim in Count IV. *See Bamert*, 445 F. App'x at 267. And since neither party questions the authenticity of the emails, the Court considers Amerijet's motion as a 12(b)(6) motion to dismiss. *See Horsley*, 304 F.3d at 1134.

Under Rule 8, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When ruling on a motion to dismiss under Rule 12(b)(6), a court must view the complaint in the light most favorable to the plaintiff and assume the veracity of well-pleaded factual allegations. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). However, this tenet does not apply to legal conclusions, and such conclusions "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Though a proper complaint "does not need detailed factual allegations," it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At a minimum, a plaintiff must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In other words, the

complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element. *Twombly*, 550 U.S. at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Despite the IBT's contentions, the Court grants Amerijet's motion to dismiss Count IV. To begin, the Court notes that the claims regarding Pilot Belch have been rendered moot in light of Amerijet's payment of his minimum guarantee. *See* Def.'s Notice of Mootness 3. In addition, the October 27, 2011 email belies the IBT's claim that it notified Amerijet of Pilot Hartlemark's eligibility as it does not mention his name at all but instead refers to an employee named Higgins whose claim is no longer at issue. *See* Def.'s Mot. to Dismiss First Am. Compl. 10 n.6, Ex. 2. Since "[i]t is the law in this Circuit that 'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern,'" the October 27, 2011 email must control. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)). This rule applies even to exhibits that are attached to a motion to dismiss but are incorporated by reference. *See Cucinotta v. CVS Pharmacy, Inc.*, No. 8:12-cv-1194-T-33AEP, 2012 U.S. Dist. LEXIS 160993, at *9–10 (M.D. Fla. Nov. 9, 2012).

This leaves the IBT's May 3, 2011 email containing the names and contact information of employees who are allegedly eligible for the minimum pay guarantee. The IBT contends that, in light of the disputed interpretations of the award, the Court should remand the case to arbitration. It is true that courts in the Eleventh Circuit have at times remanded disputes over the interpretation of awards to the arbitrator for resolution, and in particular where an award's grant of back pay remains ambiguous. *See, e.g., Aluminum Brick & Glass Workers Int'l Union v. AAA*

*Plumbing Pottery Corp.*, 991 F.2d 1545, 1549 (11th Cir. 1993) ("If the parties cannot agree on the amount of backpay, . . . the normal course of action is to treat the award as ambiguous or incomplete and remand the dispute to the original arbitrator to clarify the award."); *Coca-Cola Bottling Co. v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers, Local Union No. 991*, 506 F. Supp. 2d 1052, 1056 (S.D. Ala. 2007) (recommending remand "in cases where the financial terms of an award are ambiguous and unenforceable"). However, where a court finds that an award is not ambiguous, remand is not appropriate. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLCI v. Smurfit-Stone Container Corp.*, 479 F. App'x 250, 254 (11th Cir. 2012) (declining to remand a case to the arbitrator where the court found the arbitrator's award of back pay to be unambiguous).

In this case, the Court finds that the award is not ambiguous and thus declines to remand the case to the arbitrator. In his award, the arbitrator found that all pilots who held bidding privileges during the contested period were entitled to the minimum pay guarantee, subject to exceptions set forth in Section 5.P of the bargaining agreements that deal with employee absences. Pl.'s Compl. Ex. 6, at 17. In determining whether an employee thus qualifies for the minimum pay guarantee by reference to Section 5.P, the arbitrator explicitly states that Amerijet will have the burden of disproving a pilot's asserted availability "[o]nce a pilot has presented *evidence* of such notice of availability." *Id.* (emphasis added). Thus Amerijet's burden is not triggered until an employee presents "evidence" of the fact that he or she provided Amerijet of notice, in whatever form, of his or her availability to work during the contested period.

Because the IBT's May 3, 2011 email offers no such evidence of any notice provided to Amerijet by any of the employees listed, but instead merely contains a list of names and contact information, it contradicts the IBT's allegation that the email constituted sufficient notice to

Amerijet of eligible employees. As a result, the email exhibit must govern over the IBT's pleading. *See Cucinotta*, 2012 U.S. Dist. LEXIS 160993, at *9–10. Consequently, the Court finds that the IBT's claim regarding the May 3, 2011 email also does not constitute an allegation of a specific violation of the award. With no further allegations of distinct violations of the award, the Court therefore grants Amerijet's motion to dismiss Count IV as the IBT fails to state enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570.

### B. Count V

Contrary to its contentions regarding Count IV, Amerijet does not argue that the IBT has failed to sufficiently allege Amerijet's non-compliance with the Zero-G arbitral award in Count V. Instead, Amerijet seizes on the arbitrator's decision to award a remedy "to avoid the potential for any misapplied fairness" despite finding that Amerijet had not violated the bargaining agreement. *See* Pl.'s Compl. Ex. 7, at 13. The airline now maintains that this admission by the arbitrator signifies that the award does not draw its essence from the bargaining agreement, thus rendering the award unenforceable. As a result, Amerijet requests the Court to dismiss Count V for failure to state a claim for relief under Rule 12(b)(6).

The IBT in turn insists that Amerijet's objections are in fact an effort to induce a judgment on the pleadings. It again stresses the deference that federal courts must show for arbitral decisions and contends that the arbitrator's decision here constitutes a plausible interpretation of the bargaining agreement. Moreover, the IBT reasserts its position that the Court should remand the decision to the arbitrator if it determines that the award is ambiguous.

As mentioned, a plaintiff need only allege enough facts to state a claim for relief that is facially plausible in order to survive a 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 570. Here, the IBT has presented sufficient facts demonstrating distinct violations of the arbitrator's

Zero-G award, a point that Amerijet does not contest. Namely, the IBT asserts that Amerijet has failed to notify Flight Engineers Michael and Luis Roca of opportunities to bid on Zero-G flights. Rather, Amerijet challenges the fundamental enforceability of the arbitrator's award. This claim that the award is unenforceable, and thus should be vacated, is the mirror image of the IBT's principal claim that the Court should confirm the award and require Amerijet to comply. At the motion to dismiss stage, the IBT's facially plausible allegations of a breach of the award are adequate for the claim to survive. The issue of enforceability is a matter for the Court to decide at a later stage. The Court accordingly denies Amerijet's motion to dismiss Count V.

### C. Count VI

Amerijet premises its final objection against Count VI on its own interpretation of the component leg arbitral award. In particular, Amerijet believes that the award only requires inclusion of component legs that had been scheduled at the time of a roster's publication. The airline communicated this interpretation to the IBT via email correspondence from December 20 to December 22, 2011, a little over a month after the arbitrator issued his decision. Amerijet now contends that it has complied within the bounds of its understanding of the arbitrator's decision, posting those legs that were scheduled at the time that a roster was published. For this reason, Amerijet urges the Court to dismiss Count VI for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim for relief under Rule 12(b)(6).

Further, Amerijet points out that the IBT did not contest the airline's understanding at any time during the six months that the arbitrator retained jurisdiction over disputes arising out of the implementation of the award. Amerijet thus requests that the IBT be estopped from contesting Amerijet's interpretation.

The IBT in response maintains that Amerijet is seeking dismissal purely based on its own

interpretation of the award, an interpretation that the IBT disputes. Though the IBT argues that the award itself is clear in its requirement that Amerijet post all component legs on employee rosters subject to changes based on business needs, the union requests that the Court remand the case to the arbitrator if it finds the award to be ambiguous. Additionally, the IBT claims that the issue of whether it has timely objected to Amerijet's interpretation is itself a matter for arbitration.

As with Count IV, this Court will deal with Amerijet's jurisdictional objection first. As discussed, attacks on subject matter jurisdiction are either facial or factual in nature. *Norkunas*, 720 F. Supp. 2d at 1314. In Count VI, Amerijet presents a facial attack as it "accepts [the IBT's] version of jurisdictionally-significant facts as true and addresses their sufficiency" rather than disputing their accuracy. *Valentin*, 254 F.3d at 363. Indeed, Amerijet does not contest the veracity of the IBT's allegations in Count VI as it did in Count IV, but instead asserts that the Court lacks jurisdiction because the IBT has failed to allege a violation of the award as Amerijet interprets it. Consequently, the Court will only look to "see if [the IBT] has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [its] complaint are taken as true for the purposes of the motion." *Lawrence*, 919 F.2d at 1529.

As a preliminary matter, the Court finds that the arbitrator's award is susceptible to multiple interpretations. Consistent with Amerijet's interpretation, the arbitrator does order that the award should be read in reference to the pre-agreement practice of not posting component legs despite language to the contrary in the company handbook. *See* Pl.'s Compl. Ex. 8, at 17. This practice was due to the reality that, "in many cases, [Amerijet] did not know with any reasonable degree of certainty what flights or routes would fly on any given day, on what equipment, and with what component legs and in what order, until the evening before the flights

depart[ed]." *Id.* at 15. Amerijet therefore offers a reasonable interpretation where the airline would only post those component legs that are already scheduled, and thus known with certainty, at the time the roster is published.

Nevertheless, the IBT submits an equally reasonable alternative interpretation requiring Amerijet to post all component legs subject to changes in schedules based on the airline's needs. Such an understanding is in accordance with the arbitrator's holding that Amerijet is "directed to include the scheduled time of their component legs on the 28-day rostered schedule as detailed and discussed . . . , with the understanding that [Amerijet] reserves the right to change such schedule as a result of [Amerijet] determined business needs." The construction is further reinforced by the arbitrator's recognition that "while [Amerijet] effectuates changes in this posted monthly schedule from time to time, the posted public schedule is approximately 90% accurate." *Id.* at 16–17.

Because the parties present conflicting yet plausible interpretations of the award, the Court at this stage denies Amerijet's motion to dismiss Count VI for lack of subject matter jurisdiction. In its ruling on the IBT's original complaint, this Court was concerned that the union was merely seeking confirmation of the arbitral award as a matter of course and thus could not allege a live and actual dispute between the parties. *See Amerijet Int'l*, 2012 U.S. Dist. LEXIS 149264, at *27. Accepting the IBT's present allegations as true, the Court finds that the union has assuaged the Court's concern by alleging a distinct violation of its interpretation of the arbitral award in the form of its claim regarding Pilot Palacios. Accordingly, the Court denies Amerijet's 12(b)(1) motion.

Since Amerijet fundamentally offers the same argument in its 12(b)(6) motion, the Court likewise denies the airline's alternative basis for dismissal. Viewing the complaint in the light

most favorable to the IBT and assuming the veracity of the union's factual allegations, *see Speaker*, 623 F.3d at 1379, the IBT has adequately stated a claim that Amerijet violated the award as the IBT conceives it. The Court shall resolve the matter of the parties' varying interpretations at a later stage as the issue implicates the essential merits of the IBT's claim. At this time, the IBT has presented sufficient factual allegations in Count VI to survive a motion to dismiss.

### III. CONCLUSION

For the above reasons, it is

**ADJUDGED** that

(1) Defendant Amerijet International, Inc.'s Motion to Strike Counts I, II, and III and to Dismiss Counts IV, V, and VI of the First Amended Complaint **(D.E. No. 31)**, filed on **November 20, 2012**, is GRANTED IN PART and DENIED IN PART.

(2) The Court grants Amerijet's motion to strike Counts I, II, and III under Rule 12(f) as this Court has already dismissed the counts for lack of subject matter jurisdiction.

(3) The Court grants Amerijet's motion to dismiss Count IV as the IBT has failed to state a claim alleging a concrete violation of the arbitral award.

(4) The Court denies Amerijet's motion to dismiss Counts V and VI. The IBT has

sufficiently alleged violations of the respective arbitral awards.

(5) The IBT shall file an amended complaint no later than **April 9, 2013**.

DONE AND ORDERED in Chambers at Miami, Florida, this 15 day of March, 2013.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record