UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-60654-CIV-MORENO

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,

    Plaintiff,

vs.

AMERIJET INTERNATIONAL, INC.,

    Defendant.
_____/

## ORDER DENYING DEFENDANT AMERIJET INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant Amerijet International Inc.'s Motion for Summary Judgment (**D.E. No. 42**), filed on **July 22, 2013**. Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, it is ADJUDGED that Defendant Amerijet's Motion for Summary Judgment is DENIED as to Count I. This Court finds that there is no dispute of material fact as to Arbitrator Jay Goldstein's jurisdiction to award a scheduling remedy within the "Zero-G" arbitration. This Court REMANDS Count II to Arbitrator Dennis Campagna for further clarification. This Court finds that the "Component Leg" arbitration decision is subject to multiple good faith interpretations, and as it is improper for this Court to pass its own judgment as to the best interpretation of the award, the Court remands the matter to Arbitrator Campagna.

I.    **Procedural Background**

Plaintiff International Brotherhood of Teamsters is a labor organization that represents

separate bargaining units of Amerijet International ("Amerijet")'s pilots and flight engineers. Amerijet is a common air carrier that is subject to the duties of the Railroad Labor Act ("RLA") 45 U.S.C. § 151, et seq. (1986). The RLA provides a framework "for resolution of disputes between air carriers and their employees that 'grow[ ] out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Id.*

On August 27, 2009, after four years of bargaining without reaching an agreement, the International Brotherhood of Teamsters initiated a strike against Amerijet. On September 8, 2009, the International Brotherhood of Teamsters and Amerijet reached two collective bargaining agreements responsive to the concerns of pilots and flight engineers, respectively. The instant action arose when the International Brotherhood of Teamsters brought a six-count complaint against Amerijet seeking relief on a variety of disputes arising out of the grievance procedures of the parties' collective bargaining agreements. The Court previously dismissed four of the six counts. Amerijet now moves for summary judgment on the remaining two counts, presently set forth as Counts I and II of Plaintiff Amerijet's Second Amended Complaint. In these Counts, International Brotherhood of Teamsters seeks enforcement of two arbitration awards, referred to between the parties as the "Zero-G" award (Count I) and the "Component Leg" award (Count II). Both awards concern Amerijet's management right to schedule and assign work.

## II.  Legal Standard

Summary judgment is authorized where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere

allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The standard of review for a arbitration award is high. A district court "do[es] not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Paperworkers Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Furthermore, "[d]istrict courts hearing [a]rbitration appeals will not re-examine the merits or factual determinations of the underlying arbitration award." *Great Am. Ins. Co. v. Moye*, 733 F.Supp.2d 1298, 1301 (M.D. Fla. 2010). An arbitrary and capricious standard allows an arbitration award to stand "[a]s long as a reasonable basis appears for the decision." *White v. Coca–Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008). An arbitration award is thus presumptively entitled to deference and enforcement. *See, e.g., Rosensweig v. Morgan Stanley & Co., Inc.*, 494 F.3d 1328, 1333 (11th Cir. 2007). However, an award may not be enforced "when ... the arbitral decision does not 'draw its essence from the collective bargaining agreement.'" *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).

### III. Analysis

#### A. Arbitration Award I: the Zero-G Award (*Count I*)

In Count I of its Second Amended Complaint, the International Brotherhood of Teamsters seeks to enforce a remedy set forth in what the parties have called the "Zero-G" arbitration. Because there is no dispute of material facts regarding the arbitrator's jurisdiction to award a scheduling

remedy between the parties, and a court shall not otherwise review an arbitration award, this Court DENIES Summary Judgment as to Count I.

### i. Undisputed Facts Pertinent to the Zero-G Award

Amerijet operates flights simulating zero gravity according to a contract with Zero Gravity Corporation. Beginning in June 2009, Amerijet employed four Zero-G Professional Flight Engineers: Hector Fuentes, Tomas Serna, Luis Roca, and Michael Roca. From June until August of 2009 – approximately two months – the assignment of Zero-G work by Amerijet was done by two separate rotations among the four Zero-G qualified Professional Flight Engineers, one for NASA Zero-G flights and one for commercial Zero-G flights. Each of the four individuals was given roughly the same amount of flight time, ensuring each flew the requisite hours to remain qualified for NASA assignment. This was done in anticipation of a substantial increase in NASA flights.

On August 27, 2009, the International Brotherhood of Teamsters initiated a strike against Amerijet. On September 8, 2009, the International Brotherhood of Teamsters and Amerijet reached two collective bargaining agreements covering pilots and flight engineers, respectively, and signed a Letter of Agreement preventing Amerijet from retaliating against employees for their involvement in the strike. The strike ended on September 13, 2009 when pilots and flight engineers ratified their corresponding collective bargaining agreements.

From August 27, 2009, when the work stoppage began, until the strikers returned to work on about October 1, 2009, Hector Fuentes was the only one of the four Zero-G qualified Professional Flight Engineers available for assignment to Zero-G flights, as he was the only one of the four that did not participate in the strike. When the strikers returned to work, the collective bargaining agreements expressly reserved to Amerijet the right to schedule and assign work. Having

discontinued the four-person rotation by necessity during the strike, Amerijet elected to begin assigning the Zero-G work to Professional Flight Engineers based on seniority. Fuentes, the most senior Zero-G qualified Professional Flight Engineer, received the work when he was available, and Serna was assigned with Fuentes was not available. Luis Roca and Michael Roca did not return to work in October of 2009. Instead, they were held out from work until late January of 2010 due to investigations into allegations of misconduct. Thus Fuentes and Serna shared work, but due to a decrease in the quantity of Zero-G work anticipated from what had been predicted in the summer of 2009, there was no Zero-G work in January or March of 2010.

When the Rocas did return, Amerijet did not elect to return to a four-person rotation for Zero-G work assignments. Not only were neither of the Rocas qualified for NASA assignments, as they had not worked the requisite Zero-G flights over the prior 90 day period, but moreover, the small quantity of Zero-G flights did not require expansion of the number of qualified Professional Flight Engineers. Amerijet did not elect to re-train the Rocas and impose the costs on its customer, Zero-G, which by contract was responsible for the expenses associated with training. Thus the Rocas were not included in Zero-G assignments following their belated return to Amerijet in January of 2010.

### ii. The Zero-G Grievances and Arbitration

On October 26, 2009, the International Brotherhood of Teamsters filed two "group" grievances, one on behalf of the four members of the Professional Flight Engineer group, complaining that:

> All trained crewmembers who have special qualifications, i.e. Zero-G, are not being flown in accordance with the NASA requirements of flying 30 parabolic flights within 90 days. These crewmembers will not be current with NASA.

The remedy sought was to "[i]mmediately fly all special qualified crewmembers to be current with NASA requirements as per their special training." *See* Arbitration Decision of Goldstein (D.E. 48-1) at 2.

The Chief Pilot denied the grievances in accordance with the first step of the multi-step grievance process in the collective bargaining agreements, "as there is no [collective bargaining agreement] requirement to maintain Zero-G schedule or currency." *Id.* at 3. After the grievances were also denied at subsequent steps in the process, and advanced to the System Board, which deadlocked, the International Brotherhood of Teamsters advanced the grievances to arbitration. In his decision, Arbitrator Jay Goldstein concluded that there was no clear evidence to support the contention that Amerijet stopped assigning any grievants to Zero-Gravity flights in retaliation for their union activities, and denied the grievance with respect to any violation of the parties collective bargaining agreement or the Letter of Agreement. *Id.* at 12.

Ultimately, however, Arbitrator Goldstein decided that Amerijet's Zero-G work schedule ought to be altered. Explaining that a "partial remedy" was "required to avoid the potential for any misapplied fairness", he directed that Amerijet modify its scheduling practices in such a way so as to entitle Luis and Michael Roca to be assigned to Zero-G flying. *Id.* at 13.

### iii. Enforcement of the Arbitration Award

A federal court may decide to vacate or remand an arbitration award only if the award "fails to conform, or confine itself, to matters within the scope of the System Board of Adjustment's jurisdiction," *citing Parsons v. Cont'l Airlines, Inc.*, 215 Fed. App'x 799, 801 (11th Cir. 2007). An arbitrator's authority is circumscribed by the arbitration agreement; whether an arbitrator has exceeded these bounds is an issue for judicial resolution. *Piggly Wiggly Operators' Warehouse, Inc.*

*v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980); *see also Centralab, Inc., Fort Dodge, Iowa v. Local No. 816, Int'l Union of Electrical, Radio and Machine Workers of America*, 827 F.2d 1210, 1217 (8th Cir. 1987) ("Where an arbitrator goes beyond his contractual authority to decide issues not properly before him, his award fails to draw its essence from the agreement and must be vacated, despite the usual great deference given to arbitrator's awards."). However, arbitrators have broad powers to fashion appropriate remedies on submitted issues.

This Court is not called to be an appellate court on arbitration decisions. An arbitration award is presumptively entitled to deference and enforcement. *See, e.g., Rosensweig v. Morgan Stanley & Co., Inc.*, 494 F.3d 1328, 1333 (11th Cir. 2007). "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Enterprise Wheel*, 363 U.S. at 596. Judicial review of an award is "'circumscribed,' as arbitrators 'do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party.'" *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011). As the Supreme Court observed in *Enterprise Wheel*, "It was the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." 363 U.S. at 599.

An award's presumption of enforceability holds true even if the reviewing court finds factual or legal error or disagrees with the arbitrator's interpretation of the parties' contract. "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("*Misco*"); *see*

*also W. R. Grace Co. v. Local Union 759, Int'l Union of Rubber Workers,* 461 U.S. 757 (1983). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco,* 484 U.S. at 38. "An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet it may not be subject to court interference." *Delta Air Lines v. Air Line Pilots Assoc.,* 861 F.2d 665, 670 (11th Cir. 1988).

Here, this Court defers to the arbitrator's award. Arbitrator Goldstein's scheduling remedy arose from the essence of the parties' collective bargaining agreement. He relied on past practices and traditional notions of arbitral fairness, drawing upon Amerijet's past practices with respect to Zero-G flight bidding in the construction of an equitable award for both parties in arbitration. This was not improper action; it is well-settled that arbitrators may use extrinsic aids, including the past practice of the parties, bargaining history, and relevant legislation, to the extent that it is probative of the "sense of the agreement" and "insofar as the collective bargaining agreement permits." *Loveless v. Eastern Air Lines, Inc.,* 681 F.2d 1272, 1280 (11th Cir. 1982) (citations omitted); *see also Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509 (2001). As the Supreme Court noted in *United Steelworkers v. Warrior & Gulf Navigation Co.,* "the industrial common law – the practices of the industry and the shop – is equally a part of the collective bargaining agreement although not expressed in it." 363 US 574, 581-82 (1960).

When two parties voluntarily subject themselves to arbitration, one party should not be allowed to re-litigate the issues presented merely because the decision rendered was unfavorable. Amerijet asks this Court to re-weigh the evidence in its favor and to reconsider the dispute on its merits, precisely what the Supreme Court has cautioned courts not to do in reviewing labor arbitration awards. *Misco,* 484 U.S. at 38. Instead, to vacate an arbitration award, the relief that

Amerijet seeks, Amerijet "must refute every reasonable basis upon which the arbitrator may have acted." *Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1264 (11th Cir. 1996). Consequently the burden faced by Amerijet is high and is one that Amerijet has failed to meet with respect to this award. Arbitrator Goldstein was not restricted to the four corners of the collective bargaining agreement in his decision; he was perfectly free to consider past practice and traditional notions of fairness in order to construe the intent of the parties. By noting the suspicious circumstances surrounding Amerijet's managerial decisions and upholding the grievance despite the inadequacy of the evidence of discrimination, Arbitrator Goldstein did not, as Amerijet contends, abandon his duty to interpret the parties' agreements. He simply reached an interpretation at odds with that of Amerijet and its view of its "management rights."

There is no question of material fact as to Arbitrator Goldstein's exercise of jurisdiction in rendering the award. At the heart of the Zero-G award lies Arbitrator Goldstein's belief that Amerijet had not acted reasonably within its management rights in changing its past practice, a determination within the discretion and authority of a labor arbitrator. *Misco*, 484 U.S. at 39. Arbitrator Goldstein's award focused on fairness and a nondiscriminatory bid process, finding Amerijet had a management right to schedule, but it had to do so in such a way that it would not discriminate against the grievants. An arbitration decision is awarded significant deference, and here, there is no dispute of material facts, only an attempt by the Defendant to re-litigate a matter decided by an arbitrator.

**B.     Arbitration Award II: The "Component Legs" Arbitration Award (*Count II*)**

Count II concerns the award in a second, separate arbitration decision, referred to by the parties as the "Component Legs" arbitration. Once again, material facts are not in dispute as to this Count; rather, the parties contest the interpretation of the arbitration award. This dispute, which went

before Arbitrator Dennis Campagna in arbitration, concerned scheduling rosters. The parties had agreed in a collective bargaining agreement that certain duty rosters for pilots and professional flight engineers would include the scheduled time of their component legs – 'component legs' meaning the details regarding the starting and ending destinations of a given trip–prior to the start of each 28-day bid period. In arbitration, the International Brotherhood of Teamsters alleged that the parties' agreement mandates that all rosters reflect component legs, but that Amerijet was posting rosters without listing the component legs of flights to be flown over each bid period. In turn, Amerijet asserted that the plain language of the collective bargaining agreement did not require that the component legs of each flight be listed in the final roster.

In pertinent part, Section 8(D)(1) of the collective bargaining agreement reads:

> a. Rostered Duties – The rostered or scheduled time of duty periods will include the scheduled time of their component legs, deadheading, aircraft respositioning, reserve, training and other related duties. *See* Arbitration Decision of Campagna (D.E. 48-2) at 2.

The language of Arbitrator Campagna's award concludes the following:

> Upon careful review of the record evidence in this case, it is apparent that by posting a monthly public schedule, [Amerijet] has a fairly good idea as to its destinations for that month...In this regard, it was determined that while [Amerijet] effectuates changes in this posted monthly schedule from time to time, the posted public schedule is approximately 90% accurate....Accordingly, this Arbitrator sees no reason why the Company cannot list the

scheduled time of a crew member's component legs as required by Section 8(D)(1), with the accepted understanding that per the pre-contract practice from 2004-2009, a practice well known to the parties at the time they agreed upon the inclusion of the subject language as part of their CBAs, schedules change from time-to-time occur based upon [Amerijet]'s needs...

...Given the foregoing understandings, I find and conclude that the Company is responsible to list component legs per section 8(d)(I) in the roster to the extent noted and discussed above. *See* Arbitration Decision of Campagna (D.E. 48-2) at 16-17.

This award is susceptible to multiple interpretations. Amerijet offers that this language directs the airline to post only those component legs that are already scheduled, and thus known with certainty, at the time the roster is published. The IBT submits an equally reasonable alternative interpretation, however, offering that this language requires Amerijet to post all component legs subject to changes in schedules based on the airline's needs.

This Court would be imprudent to determine which of these two interpretations should prevail. Judicial review of arbitration awards is "among the narrowest known to the law." *Int'l Ass'n of Machinists & Aerospace Workers v. Venezolana Internacional de Aviacion, S.A.*, 678 F.Supp. 264, 266 (S.D.Fla. 1988). This Court itself has already observed that the "award is susceptible to multiple interpretations." Order Granting in Part and Denying in Part Motion to Dismiss (D.E. 38) at 17. As the First Circuit noted in *Airline Pilots Ass'n v. Pan American Airways Corp.*, 405 F.3d 25 (1st Cir. 2005), "[w]here an attempt to 'enforce' an award generates or reveals a dispute requiring interpretation of the award's scope or application, that dispute must be referred to a reconvened

board of arbitration for determination." Because this arbitration award is too ambiguous to enforce, this Court remands it to Arbitrator Campagna for clarification.

## IV. Conclusion

Defendant Amerijet's Motion for Summary Judgment is DENIED as to Count I. There is no dispute of material facts regarding the arbitrator's jurisdiction to award a scheduling remedy between the parties, and a court shall not otherwise review an arbitration award. Because the "Component Leg" arbitration decision is subject to multiple good faith interpretations, however, this Court REMANDS Count II to Arbitrator Dennis Campagna for further clarification.

DONE AND ORDERED in Chambers at Miami, Florida, this 4th day of December, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record